IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DONICHA MCCANN-CROSS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 25-167-GBW |
| | ) |
| CORAS WELLNESS AND | ) |
| BEHAVIORAL HEALTH, | ) |
| | ) |
| Defendant. | ) |

Donicha McCann-Cross, Dover, Delaware – *Pro se* Plaintiff

Stacey A. Scrivani, STEVENS & LEE, Wilmington, Delaware – Counsel for Defendant CORAS Wellness and Behavioral Health

**MEMORANDUM OPINION**

June 24, 2025
Wilmington, Delaware

**WILLIAMS, U.S. District Judge:**

## I. INTRODUCTION

On February 11, 2025, Defendant CORAS Wellness and Behavioral Health removed this employment discrimination lawsuit from the Superior Court for the State of Delaware. (D.I. 1.) Plaintiff Donicha McCann-Cross' *pro se* Complaint is the operative pleading. (D.I. 1-1.) Defendant now moves to dismiss the Complaint. (D.I. 6.) The Court will deny Defendant's motion to dismiss because the Complaint, liberally construed, states a plausible *prima facie* claim.

## II. BACKGROUND

The Complaint alleges employment discrimination in the form of constructive discharge, discipline, harassment, and hostile work environment based on race and sex, for which Plaintiff seeks $400,000 in monetary damages. (*See* D.I. 1-1.) According to the Complaint, and the attached Delaware Department of Labor (DDOL) Charge of Discrimination, Plaintiff is a multi-racial woman who worked for Defendant as a Licensed Practical Nurse from May 2022 until her constructive discharge in January or March 2024.[1] (*Id.* at 2, 12.)

While employed with Defendant, Plaintiff allegedly experienced different treatment than coworkers of different races and sexes when it came to discipline.

---

[1] According to Plaintiff's response to Defendant's motion to dismiss, "[P]laintiff is a black woman." (D.I. 9 at 7.)

1

For example, in November 2022, Plaintiff received a "write-up" for a medication error, but the lead nurse (presumed to be of a different race than Plaintiff) who authorized administration of the medication was not disciplined or otherwise held responsible for the error. (*Id.* at 2-3.) Later, Plaintiff was involved in another "medication mix-up." (*Id.* at 6; *see also id.* at 12.) Plaintiff's supervisor, Audrey Aldrich, initially told Plaintiff to write an occurrence report regarding the mix-up. (*Id.*) Yet when Aldrich learned that Plaintiff's coworker, Adam Cooke (presumed to be of a difference race and sex than Plaintiff), was partially responsible for the error because he had failed to clean the "med cart" and "med room," Aldrich changed her mind and told Plaintiff not to write an occurrence report. (*Id.* at 12.)

Plaintiff had other interactions with Aldrich that encumbered Plaintiff's ability to do her job and made her feel as though she was being unfairly treated based on race and sex. For example, Aldrich regularly compared Plaintiff to Cooke (presumed to be of a difference race and sex than Plaintiff) in a manner that was critical of Plaintiff and complimentary of Cooke, saying things like, "You ask questions, Adam doesn't." (*Id.* at 3.) On one occasion, when Plaintiff reported to Aldrich that a white client had used a racially charged slur and then pushed a client of color, Aldrich either ignored Plaintiff or told her not to write an incident report about what happened. (*Id.* at 12.) Based on this exchange, Plaintiff did not feel comfortable reporting a later, similar incident between clients to a supervisor.

2

(*Id.* at 3-4, 12.) Then, on December 27, 2023, Aldrich asked Plaintiff to move a "med cart" or medicine cabinet from one building to another with no assistance. (*Id.* at 7, 12.) Plaintiff was physically injured in the process, and she had to leave work due to the injury. (*Id.*)

Plaintiff also had interactions with other supervisors that encumbered her ability to do her job and made her feel as though she was being unfairly treated based on race and sex. For example, on July 18, 2023, Plaintiff's supervisor, "Brittany Washington, sent a muajsia adult sex toy to [P]laintiff's phone via text message." (*Id.* at 4.) The sex toy was a replica of a black male torso, from chest to genitalia, marketed "for female hands free pleasure."[2] (D.I. 4.) On another occasion, a different supervisor, Christina Davila, offhandedly referred to "groceries and such" as "women's work," which Plaintiff found offensive. (D.I. 1-1 at 12.) When Plaintiff spoke to her supervisors about problems at work, on at least one occasion, Plaintiff was told "she was responding from PTSD," even though Plaintiff does not have post-traumatic stress disorder. (*Id.* at 4-5.)

Plaintiff presented a discrimination complaint to DDOL on March 8, 2024. (*Id.* at 12.) On September 19, 2024, the Equal Employment Opportunity

---

[2] Plaintiff's response to Defendant's motion to dismiss states that Washington also sent Plaintiff "an image of a man's penis." (D.I. 9 at 5.) It is unclear if this is in reference to the text message described above or a separate text message.

3

Commission (EEOC) "accorded substantial weight to the findings of" DDOL, dismissed Plaintiff's charge, and issued Plaintiff a Notice of Right to Sue. (*Id.* at 77.) Plaintiff filed the Complaint with the Superior Court for the State of Delaware on October 18, 2024. (*Id.* at 2.) A copy of DDOL's findings was not included with the Complaint.

## III. LEGAL STANDARDS

In reviewing a motion to dismiss filed under Fed. R. Civ. P. 12(b)(6), the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to Plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Because Plaintiff proceeds *pro se*, her pleading is liberally construed and her Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94.

A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). "Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). The Court is "not required to

4

credit bald assertions or legal conclusions improperly alleged in the complaint." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). A complaint may not be dismissed, however, "for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014).

Courts faced with a motion to dismiss pursuant to Rule 12(b)(6) must generally limit their consideration to "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). A complainant must plead facts sufficient to show that a claim has "substantive plausibility." *Id.* at 12. That plausibility must be found on the face of the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the [complainant] pleads factual content that allows the court to draw the reasonable inference that the [accused] is liable for the misconduct alleged." *Id.* Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## IV. DISCUSSION

Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment,

because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). When a plaintiff presents circumstantial evidence of discrimination, the *McDonnell Douglas* burden-shifting framework applies. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410 (3d Cir. 1999). "In McDonnell Douglas, the Supreme Court created a special scheme for structuring the presentation of evidence in discriminatory treatment cases under Title VII." *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997).

The *McDonnell Douglas* burden-shifting analysis proceeds in three steps. *Id.* First, Plaintiff must establish a *prima facie* case of discrimination. *Id.* If Plaintiff establishes a *prima facie* case of discrimination, the burden shifts to Defendant "to articulate some legitimate, nondiscriminatory reason" for the employee's treatment. *McDonnell Douglas*, 411 U.S. at 802. If Defendant carries this burden, then Plaintiff "must have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410 (3d Cir. 1999).

At this stage of the case, the Court only considers whether a substantively plausible *prima facie* case of discrimination can be reasonably inferred from the facts presented by Plaintiff. Starting with Plaintiff's Title VII hostile work environment

claims, Plaintiff must show the following: (1) she "suffered intentional discrimination because of" her race, sex, or both; (2) "the discrimination was severe or pervasive"; (3) "the discrimination detrimentally affected" her; (4) "the discrimination would detrimentally affect a reasonable person in like circumstances"; and (5) "the existence of *respondeat superior* liability." *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017) (quoting *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013)).

Liberally construed, Plaintiff's pleading alleges that supervisors privately sent Plaintiff an inappropriate sexually and racially charged text message, required her to complete a task beyond her physical capacity resulting in injury, ignored her concerns about a racially charged physical altercation between clients, criticized Plaintiff for asking too many questions, disciplined her differently than coworkers of different races and sexes, and questioned her emotional aptitude when she raised concerns about the work environment. Allegedly, the foregoing interfered with Plaintiff's ability to do her job and caused her physical and emotional harm.

Viewing the facts in the light most favorable to Plaintiff, the detrimental impact alleged appears reasonable under the circumstances presented. With due consideration for harmful race and sex-based stereotypes regarding sexual tendencies, physical strength, assertiveness, and emotional volatility, the facts alleged sufficiently establish, for this stage of the case, a nexus between Plaintiff's

7

protected classes and the treatment she received. As such, Plaintiff's pleading plausibly raises a Title VII hostile work environment claim, and the Court need not delve further into Plaintiff's claims of race and sex-based constructive discharge, discipline, and harassment at this stage.³

## V. CONCLUSION

For the above reasons, the Court will deny Defendant's motion to dismiss (D.I. 6).

An appropriate Order will be entered.

---

³ The Court notes that Title VII does not categorically bar claims for same-sex sexual harassment. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) ("A trier of fact might reasonably find such discrimination, for example, if a female victim is harassed in such sex-specific and derogatory terms by another woman as to make it clear that the harasser is motivated by general hostility to the presence of women in the workplace.").